Filed 8/28/24  P. v. White CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JERRY WHITE,<br><br>     Defendant and Appellant. | A168970<br><br>(Contra Costa Super. Ct.<br> No.05-981964-0) |

Defendant Jerry White appeals the trial court's denial of his petition for resentencing pursuant to Penal Code[1] section 1172.75.  White contends that the court abused its discretion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) in declining to dismiss White's five prior strike convictions.  We disagree and affirm.

## I.  BACKGROUND

### A.  Procedural History[2]

In December 1998, the People filed a felony information charging White with:  (1) assault with a deadly weapon on a peace officer (§ 245, subd. (c);

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] We grant the People's unopposed request for judicial notice.

1

counts one — three); (2) taking a vehicle (Veh. Code, § 10851, subd. (a); count four); (3) evading a police officer while driving recklessly (Veh. Code, § 2800.2; count five); (4) second degree burglary (§§ 459, 460, subd. (b); count six); (5) receiving stolen property (§ 496, subd. (a); count seven); and (6) possessing ammunition as a convicted felon (former § 12316, subd. (b)(1); count eight). The information further alleged that White had five prior strike convictions[3] (§ 667, subds. (b)—(i)) and a prior conviction for taking a vehicle (§ 666.5, subd. (a)), and previously served a prison term (former § 667.5, subd. (b)).

In June 1999, a jury found White not guilty as to one of the counts of assault with a deadly weapon but guilty as to all remaining counts. The trial court found the enhancement allegations to be true. At sentencing, White asked the court to exercise its discretion under *Romero* and dismiss his five prior strike convictions. The court declined to do so with respect to White's convictions for assault with a deadly weapon and evading while driving recklessly (counts one, three, and five) but dismissed four of the five prior strikes with respect to his convictions for taking a vehicle, burglary, and receiving stolen property (counts four, six, and seven). The court sentenced White to 34 years to life in prison, which included a one-year enhancement for his prior prison term under former section 667.5, subdivision (b).

In August 2023, White petitioned for resentencing under section 1172.75. In his petition, he requested that the trial court strike his one-year prison prior as required by section 1172.75 and renewed his *Romero* motion. White cited to his youth, abusive upbringing, drug addiction, and mental

---

[3] The prior strike convictions were for a series of first degree burglaries White committed over several weeks in 1992 when he was 18 or 19 years old. He was 23 years old when he committed the offenses at issue here.

illness as mitigating factors in support of the dismissal of his prior strikes. The prosecution conceded that the one-year prison prior should be stricken but argued that there had been no change in the law or facts since White was originally sentenced that justified the dismissal of his prior strikes. The court agreed and denied the *Romero* motion. It then struck the one-year prison prior, ran count four concurrent with counts six and seven, and resentenced White to 25 years to life in prison.

B. Facts

We adopt the pertinent portions of the factual summary from our unpublished opinion that affirmed White's convictions on direct appeal. (*People v. White* (Feb. 8, 2001, A088555) [nonpub. opn.].) The parties do not dispute the accuracy of this summary.

"On the evening of June 22, 1997, or the morning of June 23, 1997, [White] burglarized [a church] by prying open the front door. He stole a telephone calling card, business cards, and church keys. On the morning of June 23, 1997 . . . he stole a red Camaro in the church parking lot from Karen Nilson, who had parked while she was dropping her children off at the school next to the church. [White] stole $800 in cash, Nilson's identification and bank cards, and a cellular phone that were all inside Nilson's Camaro.

"About 12 hours later . . . Martinez Police Officer Roger Ray sighted the stolen Camaro . . . Officer Ray activated his lights and siren and pursued the stolen vehicle. [White], who was driving the stolen car, fled at high speed through a residential area, with the tires squealing and the body of the car fishtailing, until he entered a dead end or cul de sac. Ray notified other officers by radio that [White] had entered a dead end street and that he would probably try to flee on foot. Ray parked his patrol car so as to block [White] from leaving, and got out of the car to pursue [White] on foot.

3

"[White] suddenly put the Camaro into reverse, turning the vehicle so that it faced the officer. Making eye contact with Ray, [White] then accelerated towards the officer at a high rate of speed. The Camaro hit the door of Ray's vehicle and then struck Ray himself, throwing him over the hood and windshield and rolling him down the street. Ray used his police radio to report his injuries and call for an ambulance. [¶] . . . [¶] Ray's radio reports were heard by two other officers, Steven Gaul and Frank Ferrari. Gaul and Ferrari proceeded toward the scene, and saw the fleeing Camaro near the intersection of Andrews Drive and Ulfinian. The Camaro headed straight up Andrews Drive towards the officers' car, as if [White] intended to ram them. Suddenly [White] swerved the vehicle away onto Ulfinian, colliding with a parked car and becoming temporarily stuck or entangled with the parked car.

"Officer Gaul drove the patrol car up to [White]. Ferrari exited the vehicle with his gun drawn, and ordered [White] out of the Camaro. [White] did not obey, but instead continued revving the car's engine, trying to break free. As Gaul opened his drivers-side door and began to step out, [White] succeeded in freeing the Camaro from the parked car with which it had become entangled. The stolen vehicle then smashed into the officers' patrol car, trapping Gaul's leg between the driver's door and the car itself. It then headed straight for Ferrari, but the officer managed to jump out of the way. Both officers fired shots, but [White] escaped again.

"The chase continued with Gaul in one car, Ray rejoining the pursuit, and Sergeant Brown pursuing in yet another vehicle. [White] managed to drive onto Highway 680, where he weaved in and out of traffic at about 90 miles per hour. He then turned onto Highway 4 heading the wrong way, forcing cars to veer off in both directions to avoid hitting the Camaro.

4

"[White] abruptly left the highway, eventually crashing into Ray's patrol car and the fence of a residence at Beechwood and Elderwood. Ray, joined by Officer Butler, approached the Camaro with guns drawn and succeeded in placing [White] in custody, recovering a wallet from his person." (*People v. White, supra,* A088555.)

## II. **DISCUSSION**

A. Applicable Law and Standard of Review

"California's 'Three Strikes' law applies to a criminal defendant who is currently charged and convicted of a felony and who has previously been convicted of one or more serious or violent felonies." (*In re Coley* (2012) 55 Cal.4th 524, 528.) The trial court may, either on its own motion or on application of the parties, dismiss a prior felony conviction allegation under the Three Strikes law "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529–530.)

"A [trial] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited." (*Romero, supra,* 13 Cal.4th at p. 530.) The court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We review the trial court's failure to dismiss a prior strike conviction for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).) Because the Three Strikes law "carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly

5

justify its decision to do so . . . the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Id*. at p. 378.)  As such, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Ibid*.)  Indeed, "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid*.)

B.  <u>The Trial Court Did Not Abuse its Discretion.</u>

White contends that the trial court abused its discretion by not dismissing his prior strikes because there were several compelling mitigating factors.  These included White's youth at the time of the prior strikes, his mental condition, his childhood trauma, as well as his post-conviction conduct in prison.  There is nothing in the record, however, to suggest that the court failed to consider these mitigating factors or that it otherwise abused its discretion.

At White's sentencing in 1999, the trial court declined to dismiss his prior strikes with respect to counts one, three, and five, because White "has five prior convictions for first degree burglary.  He has a continuous criminal record since the age of 16.  There was a callous disregard for human life in committing these crimes."  The court also noted that White had "engineered an escape and attempted an escape."

At the resentencing hearing in 2023, the trial court acknowledged that it was "not bound" by the 1999 decision but that it would still take the

6

decision into account in resentencing White.  The court emphasized that White had acquired several strikes simultaneously and that it did not "see new facts that merit a dismissal of the strikes."  The court acknowledged that White "has had an incredibly difficult life" but concluded that "there isn't enough information that's come before me of recent changes to adjust the public safety analysis that was inherent to the original sentence and is inherent in my decision now."

The trial court acted well within its discretion in denying the *Romero* motion.  Although White was 18 or 19 years old at the time of his prior strikes, they were for *five* first degree burglaries that he committed in the span of less than a month.  Just four years later, he committed the subject offenses, which involved assaulting two police officers while driving recklessly in a stolen vehicle and endangering public safety while he attempted to flee.  The court considered mitigating factors such as White's youth, abusive upbringing, history of addiction, and mental illness and reasonably concluded that these factors did not justify the dismissal of the prior strikes.  This was proper in light of the number of prior strikes as well as the reckless and violent nature of the subject offense, notwithstanding the "new scientific evidence" regarding young adult brain development that White cites.

White's reliance on *People v. Avila* (2020) 57 Cal.App.5th 1134 is unavailing.  There, the Court of Appeal found an abuse of discretion because the trial court mistakenly believed that it could *not* consider certain mitigating factors that were relevant, including the remoteness of the prior strikes and the defendant's youth when he committed the prior strikes.  (*Id.* at pp. 1141—1142.)  That is not the case here, as the trial court considered relevant mitigating factors such as White's youth and background at

7

resentencing. And in considering these factors, the court had broad discretion to determine whether extraordinary circumstances exist such that a "criminal falls outside the spirit of the three strikes scheme." (*Carmony, supra*, 33 Cal.4th at p. 378.)

White further contends that dismissal is warranted based on his postconviction conduct in prison, which precluded the trial court from finding by clear and convincing evidence that a lesser sentence would endanger public safety. (§ 1172.75, subd. (d)(1).) He relies on section 1172.75, subdivision (d)(3).[4] But that subdivision does not help White.

We initially note that in accordance with section 1172.75, subdivision (d)(1), resentencing *did* result in a lesser sentence than the sentence originally imposed, as White's sentence was reduced from 34 years to life to 25 years to life. There is no requirement, contrary to White's argument, that resentencing under section 1172.75 result in a determinate sentence.

Similarly, section 1172.75, subdivision (d)(3) does not support a lower sentence. That subdivision provides that the trial court "may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk of future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

At resentencing, the trial court expressly considered many of the postconviction factors identified in section 1172.75, subdivision (d)(3),

---

[4] To the extent White relies on section 1385, subdivision (c)(2), we do not consider this argument because as we held in *People v. Olay* (2023) 98 Cal.App.5th 60, 62, "the term 'enhancement' in section 1385, subdivision (c) does not include prior strikes."

including White's current age and his participation in programs and mental health treatment. Nonetheless, White argues that the court should have found that he would not be a danger to public safety due to his declining health and use of a wheelchair. However, in 2021, White fought with another inmate and punched him in the face. In 2022, he used part of his bed to break the glass window of his cell door. In 2023, White used parts of his wheelchair to damage his cell window. Given these recent acts of violence, the nature of White's current offenses, and his extensive criminal history, the court did not abuse its discretion in finding that there were no new facts that warranted "adjust[ing] the public safety analysis that was inherent to the original sentence."

## III. DISPOSITION

The judgment is affirmed.

CHOU, J.

WE CONCUR.

JACKSON, P. J.
SIMONS, J.

*People v. White* (A168970N)